CORRECTED

# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 20-1844V

| | |
|---|---|
| FAYTH BRENNAN,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: September 13, 2023 |

*Rhonda Lorenz-Pignato, Shannon Law Group, PC, Woodridge, IL,* for Petitioner.

*Mark Kim Hellie, U.S. Department of Justice, Washington, DC,* for Respondent.

### RULING ON ENTITLEMENT[1]

On December 14, 2020, Fayth Brennan filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from a tetanus diphtheria ("Td") vaccine received on November 7, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that record evidence preponderantly establishes that onset of Petitioner's shoulder pain began within 48 hours of vaccine

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

administration, and that Petitioner has satisfied the remaining requirements for entitlement.

## I. Relevant Procedural History

The case was activated on February 24, 2021 (ECF No. 8). Following an initial status conference, Petitioner filed additional evidence and a statement of completion (ECF Nos. 12-15). The parties entered into settlement discussions a year later, but they were not fruitful. Accordingly, on August 1, 2022, Petitioner moved for a ruling on the record in favor of entitlement (ECF No. 33). Respondent opposed the motion on August 31st (ECF No. 34), and Petitioner replied on September 14, 2022 (ECF No. 35). The issues of the onset of Petitioner's shoulder pain and entitlement to compensation are ripe for a ruling.

## II. Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete

as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
> 
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
> 
> (ii) Pain occurs within the specified time-frame;

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. Section 11(c)(1)(A)(B)(D)(E).

3

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

### B. Relevant Factual History

This ruling contains only a brief overview of facts relating to the onset of Petitioner's symptoms and entitlement to compensation.

#### 1. Medical Records

##### a. Pre-vaccination

On December 11, 2018, Petitioner presented to John Brennan, doctor of chiropractic medicine, at the Brennan Chiropractic Clinic, reporting right shoulder soreness. Ex. 3 at 2. Dr. Brennan is Petitioner's husband and primary care physician, and Petitioner also works part time at his office, serving as the office manager and performing physical therapy. Ex. 1 at ¶¶ 2, 3, 5. Dr. Brennan advised her to stretch. Ex. 3 at 2.

Petitioner returned to Dr. Brennan on December 18, 2018 for continued right shoulder pain. Ex. 3 at 2. Petitioner was seen again on January 22, 2019, reporting right shoulder pain from playing pickleball. *Id.* at 1. On March 12, 2019, she complained to Dr. Brennan of right shoulder pain with abduction and rotation, as well as difficulty lifting overhead. *Id.* She also reported that her mid-back was sore from playing pickleball. *Id.* Petitioner did not return to Dr. Brennan for treatment again until after vaccination. *See generally* Ex. 3.

##### b. Vaccination and Post-vaccination

On November 7, 2019, a Td vaccine was administered in Petitioner's right deltoid by Wright County Public Health. Ex. 2 at 1. Three months later, on February 11, 2020, Petitioner presented to Dr. Brennan. Ex. 3 at 9, 12-13. Petitioner reported right arm pain from a vaccine on November 7, 2019. Ex. 3 at 9. The pain was located at the vaccination site, her right deltoid area. *Id.* She reported pain immediately during the shot, and had

4

been sore since that time. *Id.* at 13. A day or two later, she maintained, she had experienced pain when moving her arm. *Id.* She reported a pain level of zero to one at rest, and ten out of ten when she moved her arm "wrong." *Id.* She had self-treated until this time, thinking it would go away. *Id.* On examination, she had decreased and painful range of motion ("ROM") in all directions, depending on her hand and thumb position. *Id.* at 9, 12. She also reported left knee pain, which was not related to the shot. *Id.* at 9. Dr. Brennan recommended hot packs and trigger point therapy. *Id.*

Petitioner returned to Dr. Brennan nearly two months later, on April 30, 2020, reporting that her right arm pain was the same. Ex. 3 at 9. She continued to have decreased ROM. *Id.* Dr. Brennan recommended stretches and trigger point therapy. *Id.* She sought care again for the same kind of pain on May 5, 2020. Ex. 3 at 9. She reported very mild improvement to no change, and she still had decreased ROM. *Id.* Dr. Brennan again recommended stretches and trigger point therapy. *Id.* Petitioner saw Dr. Brennan for the same issues on May 12, May 19, and May 26, 2020. *Id.* at 10.

On June 16, 2020, Petitioner underwent a right shoulder MRI. Ex. 4 at 1-2. The clinical history indicated that the MRI was done due to right shoulder pain and decreased ROM. *Id.* at 1. The injury was from a Td vaccine, and her pain had started one or two days after the shot. *Id.* The MRI showed a small articular sided tear of the supraspinatus and no evidence of soft tissue abnormality adjacent to the pain marker along the lateral deltoid. *Id.* at 2. There was a small area of fluid collection within the articular side of the anterior supraspinatus tendon. *Id.* at 1. There was no evidence of subacromial-subdeltoid bursal effusion. *Id.*

On July 20, 2020, Petitioner was seen by orthopedist Dr. Daniel Buss of Sports & Orthopaedic Specialists. Ex. 5 at 17. She reported right shoulder pain that began after a tetanus vaccination on November 7, 2019. *Id.* at 18. Her symptoms had continued despite self-treatment, including band exercises, and chiropractic visits with her husband since February, which included manipulation and soft tissue mobilization. *Id.* The pain was emanating from the anterior and lateral aspect of the shoulder, and was worse with reaching back, reaching across her body, and various rotational movements. *Id.* She had occasional nighttime pain. *Id.* She rated her pain as zero out of ten. *Id.* On examination, her right shoulder active ROM was slightly worse than her left shoulder. *Id.* at 19. Dr. Buss reviewed the MRI and noted a thickened inferior capsule, degenerative rotator cuff findings, a partial supraspinatus defect, atrophy of the supraspinatus, moderate acromioclavicular hypertrophy, and congenital type 3 acromion. *Id.* He advised that "her diagnosis of adhesive capsulitis can take up to 18 months to resolve." *Id.* at 19. He recommended conservative treatment including physical therapy and a possible glenohumeral joint injection, which Petitioner declined. *Id.*

Petitioner was seen by Courage Kenny Sports & Physical Therapy for a physical therapy evaluation on July 28, 2020. Ex. 5 at 2. Petitioner presented with decreased ROM,

which started after a painful vaccination to the right lateral shoulder. *Id.* at 3.[4] On examination, her right shoulder ROM was reduced and painful. *Id.* at 4. She had positive right shoulder impingement results on the Neer and Hawkins Kennedy tests. *Id.* at 5. While additional sessions were recommended, Petitioner explained that she is a physical therapy assistant and her husband is a chiropractor and she planned to do exercises on her own with her husband's help, with no further formal physical therapy planned. *Id.* at 6. Petitioner was given a home exercise program. *Id.* Petitioner filed documents from Courage Kenny Sports & Physical Therapy Center (where she received physical therapy) and Sports & Orthopaedic Specialists (her orthopedist's practice), containing twelve pages of shoulder exercises. Ex. 12.

Petitioner has continued to treat with Dr. Brennan, with additional records from 2020 through 2022.[5] Ex. 3 at 11, 14-16; Ex. 3, Vol. II at 1-4; Ex. 14 at 1-6.

### 2. Affidavits

Petitioner filed four affidavits in support of her claim. Exs. 1, 11, 12, 13. Petitioner avers that she has a degree as a physical therapy assistant. Ex. 1 at ¶ 3. She is generally in good health and tries to manage her health on her own, having only seen a medical doctor approximately three times in the 19 years prior to her vaccination. *Id.* at ¶ 4. She grew up on a farm and learned to allow injuries to heal at home rather than going to a doctor. Ex. 11 at ¶¶ 2-3. She continued these natural practices as an adult, and has minimal health insurance coverage and has had "very little medical treatment as an adult." *Id.* at ¶ 3. She tries to manage her health using her knowledge and training from working as a physical therapy assistant and 28 years working in a chiropractic office. Ex. 1 at ¶ 4.

When she received the November 7, 2019 Td vaccine, Petitioner reports, it was "more painful than any shot I had ever received before," and she recalled yelling "[ow] that hurt!" when it was administered. Ex. 1 at ¶ 7. Afterward, she experienced additional pain within 48 hours at or around the injection site in her right deltoid, as well as limited ROM. *Id.* at ¶ 10. She attempted to manage the pain on her own using hot packs, trigger point therapy, stretches, trans friction massages, and homeopathic remedies. *Id.* at ¶ 11. Approximately a month after vaccination, she contacted the Wright County Public Health Department about her shoulder pain, and was informed that the Td shot was one of the more painful shots. *Id.* at ¶ 12. Thus, she decided to continue self-treating. *Id.*

Petitioner did research online and found that beyond physical therapy, the only treatment options were medication and surgery, which she did not want to pursue. Ex. 1

---

[4] The record states that Petitioner presented with decreased ROM of her *left* shoulder (Ex. 5 at 3), but the examination section records reduced and painful ROM of her *right* shoulder (Ex. 5 at 4). Thus, the reference to Petitioner's left shoulder appears to be a typo.

[5] Many of these records are difficult to read. I make no finding as to whether all of these records are for treatment of Petitioner's right shoulder condition.

at ¶ 13. During this time, she got sick, her mother got sick, and her children came home for the holidays. *Id.* at ¶¶ 14-16.

Dr. Brennan submitted an affidavit on Petitioner's behalf. Ex. 12. He averred that as Petitioner's primary treating doctor and husband, he has seen Petitioner try to manage her health using natural methods and that except for a few rare occasions, she generally does not seek treatment from medical doctors. *Id.* at ¶¶ 4, 6-7. He saw Petitioner on a daily basis since her vaccination with the exception of short trips or visits to their children. *Id.* at ¶ 8.

On November 7, 2019, Petitioner told Dr. Brennan that she received a Td vaccine and that her right shoulder and arm were in pain thereafter. Ex. 12 at ¶ 11. Over the following month, she continued to complain that her right arm was still hurting a lot from the vaccination. *Id.* at ¶ 12. She performed stretches, but continued to have sharp pain in her right shoulder with various motions, along with pain and tenderness at the injection site. *Id.* at ¶¶ 12-13. Petitioner was busy during the months following vaccination due to the holidays, their children coming home on break, and caring for her mother and herself when they became ill. *Id.* at ¶ 14.

Levi Brennan submitted an affidavit in support of Petitioner, his mother. Ex. 13. He explained that he was away at school when she received the vaccine, but returned home for breaks around November 23-26, 2019 and December 20, 2019 to January 12, 2020. *Id.* at ¶¶ 5-6. During those breaks, he saw his mother struggle to reach at or above her head due to pain and resistance from her right arm. *Id.* at ¶ 6. When he was in the kitchen, he helped by getting items off of shelves for her. *Id.* She struggled to put on her coat or give him a hug due to her limited ROM. *Id.*

### C. The Parties' Arguments

Petitioner argues that the evidence establishes that the SIRVA Table and QAI criteria are met. Petitioner's Motion for a Ruling on the Record, filed Aug. 1, 2022 (ECF No.33) ("Mot."). [6] The first symptom of pain in her right shoulder occurred while the vaccine was being administered, and she felt pain immediately afterward, and thus the onset of her pain occurred within 48 hours of vaccination. Mot. at *14. While she did not seek formal medical attention for her injury for three months, she explains that she grew up on a farm and is trained as a physical therapy assistant, and thus used natural remedies and self-treated. Mot. at *4. She generally does not immediately go to medical doctors for health problems. *Id.*

---

[6] In the alternative, Petitioner argues that she is entitled to compensation for an injury caused in fact by the Td vaccine. Mot. at *20-26.The petition asserts only a Table SIRVA claim. In light of my ruling herein that petitioner is entitled to compensation, it is not necessary to address whether Petitioner could amend her petition to add a causation in fact claim.

As to the first QAI requirement, Petitioner acknowledges that she experienced some right-side minor muscle aches from playing pickleball in early 2019. Mot. at *15. However, these issues were resolved by mid-March 2019, nearly eight months prior to vaccination. *Id*.

Respondent argues that Petitioner has not provided preponderant evidence that the onset of her symptoms occurred within 48 hours of vaccination, and thus she is not entitled to compensation. Respondent's Rule 4(c) Report and Response to Petitioner's Motion, filed Aug. 31, 2022, at *6-7 (ECF No. 34) ("Resp."). Respondent asserts that Petitioner did not report her alleged shoulder injury to a medical professional until more than three months after vaccination, at which point she was seen by her husband only. Resp. at *6. She did not seek medical attention from a non-relative until more than seven months after vaccination.[7] *Id*. at *6.

Respondent argues that I cannot find a vaccine-related injury occurred based solely on the claims of Petitioner. *Id*. at *7. Respondent asserts that Petitioner's claims must be substantiated by medical records or credible expert medical opinion, citing *Lett v. Sec'y of Health & Human Servs.*, 39 Fed. Cl. 259, 260 (1997). *Id*. Respondent acknowledges that Petitioner's medical records reference onset shortly after vaccination, but asserts that these records "merely reflect petitioner's reported history." *Id*. Respondent adds that when Petitioner hurt her shoulder playing pickleball, "she appears to have sought treatment from her husband relatively shortly after developing pain in her right shoulder."[8] *Id*. Respondent does not argue that any other SIRVA QAI criteria or statutory requirements are not satisfied.

Petitioner replies that the evidence shows that Petitioner did report her shoulder injury to Dr. Brennan, her husband and primary care provider, sooner than Respondent asserts. Petitioner's Reply, filed Sept. 14, 2022, at *3 (ECF No. 35) ("Reply"). Petitioner cites Dr. Brennan's affidavit averring that Petitioner told him on November 7, 2019 that her right shoulder and arm were in pain following the vaccination. *Id*. (citing Ex. 12 at ¶ 11). While this report was not in a clinical setting, and thus not recorded in medical records, it was made contemporaneously. *Id*.

---

[7] Respondent's argument implies that I should give less weight to treatment records generated by Petitioner's husband. However, Respondent does not expressly argue that these records are not reliable or credible, and objects to them only insofar as they bear on the timing of the onset of Petitioner's symptoms, and not to the remaining information contained therein. It also has not been demonstrated that these records are not contemporaneous with the time of treatment. Thus, Respondent has not established any basis for treating these records differently than any other medical records.

[8] Respondent cites Dr. Brennan's affidavit indicating that Petitioner's pre-vaccination right shoulder pain from pickleball was "minor, temporary muscle soreness" (Ex. 12 at ¶ 10) in support of his implication that Petitioner sought care for the pickleball injury more quickly than she did for the vaccine injury. Resp. at *7. I do not read Dr. Brennan's affidavit to indicate that Petitioner sought care quickly for the pickleball injury.

Petitioner further asserts that Respondent's position appears to be that medical records are not credible evidence when a medical provider gets information about the history of the injury from the patient, even though "virtually all medical records get the history of the injury from the patient, and the provider relies on that history in treating the patient." Reply at *3-4. Petitioner concludes that Respondent's position seems to be that a Petitioner cannot prove onset of symptoms within 48 hours "unless she gets treatment within those 48 hours, because any medical record created after that 48-hour window is not 'contemporaneous' but would just be a recorded account of symptoms from a patient after the fact." *Id.* at *4. In support, Petitioner cites *Wilkinson*, in which I noted that Respondent's reasoning appeared to suggest that to establish a Table injury a petitioner must seek care within 48 hours after vaccination, and determined that "the Vaccine Act does not impose such a requirement," citing Section 13(b)(2). *Wilkinson v. Sec'y of Health & Human Servs.*, No. 19-0733V, 2022 WL 444451, at *4 (Fed. Cl. Spec. Mstr. Jan. 14, 2022).

Petitioner adds that Respondent made a similar argument in *Ray v. Sec'y of Health & Human Servs.*, No. 16-1388V, 2018 WL 7051571 (Fed. Cl. Spec. Mstr. Dec. 17, 2018), and that it was also rejected. Reply at *6-7. Petitioner argues that she stated in her affidavit that she had immediate pain during and after vaccination, and had other symptoms that began within 48 hours. *Id.* at *7. Petitioner asserts that the onset of her symptoms within 48 hours is corroborated by Dr. Brennan's affidavit, a VAERS report made on May 4, 2020, and Petitioner's medical records. *Id.* Petitioner emphasizes that Respondent has not provided any evidence contradicting a finding that the onset of her symptoms was within 48 hours. *Id.* at *8. Petitioner adds that a delay in seeking care for a few months "does not *per se* negate entitlement or the value of treatment records, nor does [it] render that evidence not credible." *Id.* (*citing Hutchens v. Sec'y of Health & Human Servs.*, No. 17-797V, 2021 WL 4267579 (Fed. Cl. Spec. Mstr. Aug. 31, 2021).

Finally, Petitioner asserts that she had many credible reasons for the short delay in seeking treatment. Reply at *9. These include her training as a physical therapy assistant that allowed her to self-treat; that she contacted the vaccine provider and was told that Td was a more painful vaccination, leading her to believe that the pain was normal and would go away on its own; the holidays and family activities; illnesses of Petitioner and her mother; and her longstanding custom to manage her illnesses and medical issues on her own first before seeking help. *Id.*

9

### D. Factual Finding Regarding QAI Criteria for Table SIRVA

#### 1. Onset

After a review of the entire record, I find that it is more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccine administration.

As Petitioner persuasively argues, a delay in seeking care does not automatically defeat a SIRVA claim. *See Winkle v. Sec'y of Health & Human Servs.*, No. 20-485V, 2021 WL 2808993, at *4 (Fed. Cl. Spec. Mstr. June 3, 2021) ("[i]t is common for a SIRVA petitioner to delay treatment, thinking his/her injury will resolve on its own" and finding that the onset of the petitioner's pain occurred within 48 hours of vaccination in spite of a five month delay in seeking treatment). A petitioner must only show, by a preponderance of the evidence, that the onset of his or her shoulder pain likely occurred within 48 hours. Sections 11(c)(1)(C) and 13(a)(1)(A); 42 C.F.R. § 100.3. This does *not* mean that a petitioner must be able to cite to a medical record *created* within the first 48 hours after vaccination. *See Wilkinson*, 2022 WL 444451, at *4-5; *Ray*, 2018 WL 7051571, at *5-6.

In this case, the record contains ample evidence supporting a finding that the onset of Petitioner's shoulder pain was within 48 hours, and no evidence to the contrary. When Petitioner first sought care three months after vaccination, she reported right arm pain from a vaccine on November 7, 2019, and stated that she had pain during the shot and had been sore since then. Ex. 3 at 9. A day or two later, she also had pain when moving her arm. *Id.* When she reported for an MRI, she reported right shoulder pain from a Td vaccine that started one or two days after the shot. Ex. 4 at 1. She reported to her orthopedist that her right shoulder pain began after a tetanus shot on November 7, 2019. Ex. 5 at 17. And her physical therapist documented decreased ROM from a painful vaccination to her right shoulder. *Id.* at 3. Thus, the medical records support an onset within 48 hours.

This medical record evidence is bolstered by affidavit evidence. Petitioner averred that the vaccine caused immediate pain, and provided reasonable explanations for her delay in seeking care. Exs. 1, 11. Her husband attested to the immediacy of her pain based on his observations. Ex. 12. And her child averred that while he was away when she received the vaccine, he returned home approximately two weeks later, and again a month thereafter, and witnessed her struggling to use her right arm. Ex. 13.

Respondent objects that the medical records reporting onset shortly after vaccination "merely reflect petitioner's reported history." Resp. at *7. Respondent argues that I cannot find a vaccine-related injury occurred based solely on the claims of Petitioner, and that her claims must be substantiated by medical records or a credible expert medical opinion, citing *Letts*, 39 Fed. Cl. 259. *Id.* But Petitioner's claims *are* substantiated by medical records. Although the medical records include information provided by Petitioner, the Federal Circuit has emphasized that the reliability of such

records is due in part to the very fact that they "contain information supplied *to* or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d 1525, 1528 (emphasis added). While reports of onset or pain might in some cases be undercut by other evidence (record or testimonial), that is not so here.

This case is in contrast to *Lett*, where there were *no* supporting medical records, and the petitioners sought to corroborate their claim with an expert opinion that assumed the truth of the petitioners' affidavit evidence. *Lett*, 39 Fed. Cl. at 262. There is a difference between an expert opinion that relies on the accuracy of affidavit evidence created in litigation – which is the situation addressed in *Lett* – and records of medical treatment that rely in part on histories provided to health care providers for purposes of obtaining care – which *Cucuras* instructs are generally trustworthy and reliable. *Cucuras*, 993 F.2d at 1528. Petitioner's medical records and corroborating affidavit evidence together establish that, more likely than not, the onset of her shoulder pain occurred within 48 hours of vaccination.

### 2. Other SIRVA QAI Criteria

Respondent does not contest the remaining SIRVA QAI criteria, and I find that the record contains preponderant evidence that they are satisfied. Petitioner did not have a history of right arm pain or injury prior to vaccination that would explain her symptoms after vaccination. *See generally* Ex. 3. Although she experienced some problems with her right shoulder in the year before vaccination, the last medical record relating to this problem was from nearly eight months before vaccination, suggesting that this problem resolved long before vaccination and thus would not explain her post-vaccination condition. Ex. 3 at 1. Her pain and reduced ROM were limited to her right shoulder, where the Td vaccine was administered, and no other condition or abnormality has been identified that would explain her post-vaccination symptoms. *See generally* Exs. 3, 5.

### E. Other Requirements for Entitlement

The record contains preponderant evidence that other requirements for entitlement are satisfied as well. Petitioner received a covered vaccine in the United States. Ex. 2 at 1. She experienced the residual effects of her condition for more than six months. Exs. 3 at 9-10; 5 at 17. She averred that she has not previously collected an award or settlement of a civil action for damages, and there are no civil actions pending. Ex. 1 at ¶¶ 31-32.

## Conclusion

Based on my review of the record as a whole, I find that it is more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours. I find that all other SIRVA Table requirements are met, as are other requirements for entitlement. Therefore,

Petitioner's motion for a ruling on the record that she is entitled to compensation is **<u>GRANTED</u>**.

      **IT IS SO ORDERED.**

**<u>s/Brian H. Corcoran</u>**
Brian H. Corcoran
Chief Special Master
